IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., : <br> : <br> Plaintiff, : <br> : <br> vs. : <br> : <br> VARUGHESE N. CHACKO D/B/A : <br> NEIGHBORHOOD BAR & GRILL, : <br> : <br> Defendant. : | CIVIL ACTION NO. <br><br> 1:13-CV-1977-CC |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Application for Default Judgment Against Defendant Varughese N. Chacko [Doc. No. 6] (the "Motion for Default Judgment"). For the reasons stated below, the Court grants the Motion for Default Judgment.

**I.    BACKGROUND**

    A.    Procedural History

On June 6, 2013, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") commenced this action against Defendant Varughese N. Chacko d/b/a Neighborhood Bar & Grill ("Defendant"). Plaintiff alleges Defendant violated The Communications Act of 1934, 47 U.S.C. § 605, and The Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 533, by unlawfully intercepting, receiving, and exhibiting the telecast of *Manny Pacquiao v. Shane Mosley - WBO World Welterweight Championship Fight Program* (the "Program").[1] On June 18, 2013, Plaintiff served its Complaint upon Defendant. As of the date of this Order, Defendant has not answered or otherwise responded to Plaintiff's Complaint.

On July 11, 2013, Plaintiff moved for the Clerk of Court to enter default

---

[1] The Program included all under-card bouts and fight commentary encompassed in the television broadcast of the event.

against Defendant pursuant to Federal Rule of Civil Procedure 55(a). On July 12, 2013, the Clerk of Court issued an entry of default. On July 19, 2013, Plaintiff filed the instant Motion for Default Judgment.

### B.  Factual History

According to the Complaint, Plaintiff owned the exclusive nationwide television distribution rights to the Program. Plaintiff entered into sublicensing agreements with various commercial entities throughout the United States, including entities within the State of Georgia, pursuant to which Plaintiff granted these entities the rights to exhibit the Program publicly to the patrons within their respective establishments. Plaintiff did not enter into such a sublicensing agreement with Defendant, and Defendant did not pay Plaintiff the necessary sublicensing fee required to obtain the Program for exhibition at Defendant's commercial establishment, Neighborhood Bar & Grill.

Plaintiff explains in evidentiary submissions that it has experienced a serious erosion in the sales of its proprietary programming to its commercial customers throughout the United States due to the rampant piracy of its broadcasts by unauthorized and unlicensed establishments. Accordingly, Plaintiff has embarked upon a nationwide program to police its signals for the purpose of identifying and prosecuting commercial establishments that pirate its programming. As part of this effort, Plaintiff has hired auditors and law enforcement personnel to detect and identify signal pirates.

On May 7, 2011, David Harmsen, an investigator hired by Plaintiff, visited Neighborhood Bar & Grill, which is located at 532 Grayson Highway, Suite B, Lawrenceville, Georgia 30346, and observed the unlawful exhibition of the Program inside the establishment. Plaintiff has not specified the capacity of Neighborhood Bar & Grill, but the investigator observed approximately 55 patrons during the time he was there. For an establishment with a maximum fire code occupancy of 55 persons, the rate for obtaining a commercial sublicense to exhibit the Program

publicly would have been $4,200.00. Defendant advertised the telecast on a handwritten note in the front window of the establishment and also charged a cover charge of $5.00.

Plaintiff's president, Joseph M. Gagliardi, attests that he is aware of no means by which Plaintiff's programming can be mistakenly, innocently, or accidentally intercepted. There are, however, several methods that a signal pirate can employ to unlawfully intercept and broadcast Plaintiff's programming. Plaintiff has not established the specific method by which Defendant intercepted Plaintiff's programming, but such piracy has resulted in Plaintiff's loss of revenue and also has raised the cost of service for lawful residential and commercial customers of cable and satellite broadcasting.

## II.    STANDARD OF REVIEW

Once a default has been entered, a party may seek a default judgment against the non-responsive party under Federal Rule of Civil Procedure 55(b)(2). The mere entry of a default by the Clerk of Court does not in itself warrant the entry of a default judgment by the Court. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] A default judgment is appropriate only if the factual allegations in the complaint provide an adequate legal basis to find that the defendant is liable. See Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005). "[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." Id. (citation and internal marks omitted).

If a default judgment is warranted, the Court may hold a hearing for the purpose of assessing damages. S.E.C. v. Smyth, 420 F.3d 1225, 1231, 1232 & n.13 (11th Cir. 2005) (citing Fed. R. Civ. P. 55(b)(2)). Alternatively, damages may be determined based on affidavits setting forth the necessary facts. Adolph Coors Co.

---

[2]    Fifth Circuit decisions rendered prior to September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

- 3 -

v. Movement Against Racism and the Klan, 777 F.2d 1538, 1544 (11th Cir. 1985). "A court has an obligation to assure that there is a legitimate basis for any damage award it enters . . . ." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003). However, discretion as to the judgment or the need for a hearing on damages is vested with the district court. Pope v. United States, 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

### III.  DISCUSSION

    A.    Liability

Plaintiff maintains that Defendant has violated 47 U.S.C. §§ 553 and 605. Section 553 prohibits "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Id. § 553(a)(1). Section 605 provides, in pertinent part, as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

There is disagreement among the circuit courts as to whether § 605 covers the interception of cables services carried over a cable network. The Second Circuit has held that § 605 applies to satellite transmissions and cable programming transmitted over a cable network. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996) (holding that both §§ 605 and 553 cover interception of cable programming transmitted over a cable network). In contrast, the Third and Seventh Circuits have

- 4 -

taken the position that only § 553 covers the interception of cable programming transmitted over a cable network and that § 605 covers the interception of cable transmissions as they travel through the air. See TRK Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001) (finding that Congress removed coverage of wire communications from § 605 and concluding that § 605 thus was inapplicable to theft of cable service via a cable descrambler); United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996) (affirming district court's finding that "where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network"). The Eleventh Circuit has not yet addressed the issue.

Consistent with many district courts within the Eleventh Circuit, the Court finds the interpretation of § 605 by the Third and Seventh Circuits persuasive. Joe Hand Promotions, Inc. v. ADJ Entity, LLC, No. 3:11–CV–90 (CAR), 2011 WL 4102314, at *3 n.3 (M.D. Ga. Sept. 14, 2011); J & J Sports Prods., Inc. v. Allen, No. 1:10-CV-4258-WSD, 2011 WL 941502, at *2 (N.D. Ga. Mar. 14, 2011); CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361, 1364 (S.D. Fla. 1999). That is, § 605 prohibits commercial establishments from intercepting and broadcasting satellite transmissions, while § 553 applies exclusively to broadcasts over a cable network. Notably, even Plaintiff acknowledges that "[t]he majority of the [c]ourts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system." (Mem. of Law Supp. Pl.'s Appl. for Default J. at 4.)

Plaintiff pleads in this case that Defendant violated §§ 553 and 605. Plaintiff does not specify in either its Complaint or motion papers the manner in which Defendant intercepted the programming. However, the Court recognizes, as other courts have, that the manner of interception may be exclusively in Defendant's

- 5 -

knowledge. Zuffa, LLC v. Al-Shaikh, No. 10-00085-KD-C, 2011 WL 1539878, at *5 (S.D. Ala. Apr. 21, 2011); Allen, 2011 WL 941502, at *3; Joe Hand Promotions, Inc. v. Blanchard, No. 409CV100, 2010 WL 1838067, at *2 (S.D. Ga. May 3, 2010); Joe Hand Promotions, Inc. v. McBroom, No. 5:09-CV-276(CAR), 2009 WL 5031580, at *2 (M.D. Ga. Dec. 15, 2009). Accordingly, the Court gives Plaintiff the benefit of the doubt and finds that Defendant's conduct, as set forth in the Complaint, violates both §§ 553 and 605. See ADJ Entity, 2011 WL 4102314, at *4 (finding that "the facts established by the default are sufficient to show liability under both § 503 and § 605"); Zuffa, 2011 WL 1539878, at *5 (finding that the plaintiff has "sufficiently pleaded its case so as to establish [d]efendants' liability under both Section 553 and 605"); Allen, 2011 WL 941502, at *3 (finding that the plaintiff had "alleged and presented sufficient evidence that [d]efendant violated the common elements of both § 605 and § 553").

    B.    Damages

Plaintiff seeks $10,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) for Defendant's violation of § 605(a) or $10,000.00 in statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii) for Defendant's violation of § 553(a). Additionally, Plaintiff seeks $100,000.00 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff also requests attorneys' fees and costs in an amount to be determined.

Pursuant to § 553, the Court may award statutory damages between $250.00 and $10,000.00 per violation. 47 U.S.C. § 553(c)(3)(A)(ii). Moreover, the Court may award up to $50,000.00 in enhanced damages if the Court finds that the conduct was committed willfully and for the purpose of obtaining commercial advantage or private financial gain. Id. at § 553(c)(3)(B). Statutory damages under § 605 range from $1000.00 up to $10,000.00 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). Additionally, where the conduct was committed willfully and for the purpose of obtaining commercial advantage or private financial gain, § 605(e)(3)(C)(ii) allows

for enhanced damages of up to an additional $100,000.00. The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II). Finally, § 605 provides that the Court "shall direct the recovery of full costs, including reasonable attorneys' fees" to the prevailing party, whereas § 553 states that the Court may award these costs. 47 U.S.C. § 605(e)(3)(B)(iii) and § 553(c)(2)(C).

Recovery under both §§ 553 and 605 is not permissible. Allen, 2011 WL 941502, at *2; J & J Sports Prods., Inc. v. Fitzgerald, No. 1:09-CV-1684-WSD, 2009 WL 3681834, *2 n.1 (N.D. Ga. 2009). "When a defendant has violated both §§ 553 and 605, most courts choose to award damages under § 605 because that provision 'allows for greater recovery by plaintiffs.'" J & J Sports Prods., Inc. v. Just Fam, LLC, No. 1:09-CV-3072-JOF, 2010 WL 2640078, at *2 n.3 (N.D. Ga. June 28, 2010) (quoting Enter. by J & J, Inc. v. Al-Waha Enters., 219 F. Supp. 2d 769, 775 (S.D. Tex. 2002)). Here, the difference in the minimum and maximum amount of damages allowed by §§ 553 and 605 is immaterial, as the statutory damages and enhanced damages that this Court will award do not fall below or exceed the permissible ranges of the two statutes. Nevertheless, insofar as Plaintiff specifically requests in the declaration of its attorney an award of statutory and enhanced damages pursuant to § 605,[3] (see Declartion [sic] of Ronald D. Reemsnyder in Supp. of Pl.'s Appl. for Default J. [Doc. No. 6-1] ¶ 7), the Court will award damages under the requested section.

The Court finds that an award to Plaintiff of $4,200.00 in statutory damages is warranted and sufficient because that is the fee Defendant would have paid to obtain a commercial sublicense to exhibit the Program publicly. See ADJ Entity, LLC, 2011 WL 4102314, at *4 (awarding statutory damages in the amount of the license fee that the defendant, based on its maximum capacity, would have paid the

---

[3] Plaintiff alternatively requests statutory damages under § 553. In the declaration, Plaintiff makes no request for enhanced damages under § 553.

plaintiff if it had legally purchased the right to exhibit the program); McBroom, 2009 WL 5031580, at *4 (same); J & J Sports Prods., Inc. v. Arboleda, No. 6:09-CV-467-ORL-18DAB, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009) (same); Kingvision Pay–Per–View Corp. v. El Torito Supermarket, Inc., No. 6:06–CV–657–ORL–18KRS, 2007 WL 174158, at *3 (M.D. Fla. June 19, 2007) (same).

The Court further finds, for multiple reasons, that an award of enhanced damages is justified. First, the Court is convinced that Defendant must have engaged in some deliberate act, such as using an unencryption device or another device that would allow for descrambled reception of the Program, to have received the closed-circuit broadcast of the Program. Second, Defendant advertised the showing of the Program on a handwritten sign in the front window of the establishment. Third, Defendant charged patrons a cover charge of $5.00. Fourth, Defendant publicly broadcasted the Program purposely and not by happenstance, as Defendant showed the Program on two televisions. Accordingly, the Court finds that Defendant's conduct was willful and committed for the purpose of obtaining private financial gain. The Court awards Plaintiff enhanced damages in the amount of $12,600.00, which is three times the amount of the sublicensing fee and sufficient to deter Defendant and others from committing future violations. See ADJ Entity, LLC, 2011 WL 4102314, at *5 (awarding enhanced damages under § 605(e)(3)(C)(ii) in an amount triple the statutory damages awarded); Just Fam, LLC, 2010 WL 2640078, at *3 (same); Blanchard, 2010 WL 1838067, at *4-5 (same); McBroom, 2009 WL 5031580, at *5-6 (same); Arboleda, 2009 WL 3490859, at *7 (same). This results in a total award of $16,800.00 to Plaintiff.

Finally, as the prevailing party, Plaintiff is entitled to an award of costs and reasonable attorneys' fees. 47 U.S.C. § 605(e)(3)(B)(iii). The Court instructs Plaintiff to submit an application and affidavit in support of attorneys' fees and costs within fourteen (14) days from the date of this Order.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Default Judgment [Doc. No. 6] and **AWARDS** damages in favor of Plaintiff and against Defendant in the amount of $16,800.00, which consists of $4,200.00 in statutory damages under 47 U.S.C. § 605(e)(3)(c)(i)(II) and $12,600.00 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii).  The Court **INSTRUCTS** Plaintiff to submit an application and affidavit in support of attorneys' fees and costs within fourteen (14) days from the date of this Order.  Once the Court addresses the issue of attorneys' fees and costs, the Clerk of Court shall enter a default judgment in favor of Plaintiff and against Defendant.

SO ORDERED this 25th day of November, 2013.

*s/  CLARENCE COOPER*

CLARENCE COOPER
SENIOR UNITED STATES DISTRICT JUDGE